## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE  DIVISION

George Raymond Williams MD          Civil Action No. 11-0686
Orthopaedic Surgery

versus          Judge Tucker L. Melançon

Executive Risk Specialty Ins. Co.,          Magistrate Judge Patrick J. Hanna
et al

### MEMORANDUM RULING

Before the Court is a Motion To Remand filed by George Raymond Williams MD Orthopaedic Surgery, individually and as a representative of the Class of persons similarly situated, (hereinafter collectively known as "plaintiffs") [Rec. Doc. 15], and a Motion To Remand adopting plaintiffs' memorandum filed by defendant CorVel Corporation ("CorVel") [Rec. Doc.20], defendants, Executive Risk Specialty Insurance Company ("Executive Risk") and Homeland Insurance Company of New York's ("Homeland"), opposition thereto [Rec. Doc. 25], intervening defendant, BestComp, Inc.'s opposition [Rec. Doc 26] and plaintiffs' Reply [Rec. Doc. 29].  For the reasons that follow, the Court will grant plaintiffs' and CorVel's motions to remand.

### I.  Background

Plaintiffs, George Raymond Williams MD Orthopaedic Surgery, on behalf of itself and as a representative of similarly situated health care providers in the State of Louisiana ("putative plaintiffs"),  commenced this action in the twenty-seventh Judicial District Court, St. Landry Parish, Louisiana, under the Louisiana Preferred Provider Act, La. R.S. 40:2203.1

("PPOA"), for alleged statutory violations regarding the processing and payment of medical bills in the context of workers compensation insurance. *Original Petition.* Plaintiffs initially named as defendants three Louisiana companies - SIF Consultants of Louisiana Inc. ("SIF"), Risk Management Services, LLC ("RMS) and Med-Comp USA, Inc. ("Med-Comp").  On March 24, 2011, plaintiffs filed a First Amended and Re-Stated Petition for Damages and Class Certification naming CorVel, a California corporation, and CorVel's insurers, Homeland and Executive Risk, under Louisiana's Direct Action Statute.

Executive Risk filed a Notice of Removal in this Court on May 2, 2011 on the basis of jurisdiction under 28 U.S.C. § 1332 and the Class Action Fairness Act of 2005 ("CAFA), 28 U.S.C.§ 1332(d). *R. 1.*  On May 19, 2011, plaintiffs filed their Motion to Remand and requested an expedited hearing based on the State Court having scheduled a fairness hearing to be conducted on May 27, 2011. *R. 15.*  On May 23, 2011, defendant CorVel filed its motion to remand, adopting plaintiffs' memorandum in support as its own. *R. 20.*

In response to plaintiffs' motion for expedited hearing, the Court conducted a telephone conference on May 23, 2011 and set an accelerated briefing schedule for defendants' opposition to the motion to remand and plaintiffs reply brief. *R. 21.*  Subsequent to the telephone conference, after giving the parties' filings due consideration, the Court indicated that a written ruling on plaintiffs' Motion to Remand would be issued in due course. *R. 30.*

## II.  Analysis

Plaintiffs assert that removal under 28 USC 1332(a), diversity jurisdiction, is improper

as defendants SIF, RMS and Med-Comp are all Louisiana companies.  Plaintiffs also argue that of the six defendants named in plaintiffs' original and amended petitions, only Homeland has consented to Executive Risk's removal.   Plaintiffs further assert that Executive Risk improperly relied on CAFA in removing the state court proceedings because the local controversy exception to CAFA, § 1332(d)(4)(A),  requires a remand of these proceedings.

Executive Risk and Homeland contend that diversity jurisdiction exists under 28 U.S.C. § 1332. Executive Risk and Homeland base their contention on the following: (1) plaintiffs "have begun proceedings to confect a settlement with CorVel"; (2) SIR and RMS have "settled with the plaintiff;" and, (3) the non-diverse citizenship of Med-Comp should not be considered because plaintiffs have "improperly joined claims" against Med-Comp with their claims against Executive Risk and Homeland.  *R. 25*.  Because of the alleged agreements to settle with plaintiffs, Executive Risk and Homeland maintain that consent among those defendants is not required.  Executive Risk and Homeland further contend that removal is proper under CAFA because plaintiffs undoubtedly meet the threshold requirements to extend federal jurisdiction under 28 U.S.C. § 1332(d)(2) and plaintiff can not establish the local controversy exception.  The Court will address each of these issues in turn.

### A.  Motion to Remand For Improper Removal

The federal removal statute, 28 U.S.C. § 1441(a), allows for the removal of "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." Subsection (b) specifies that suits arising under federal law are removable

without regard to the citizenship of the parties; all other suits are removable "*only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought*." 28 U.S.C. § 1441(b) (emphasis added). The Court is prohibited by statute from exercising jurisdiction over a suit in which any party, by assignment or otherwise, has been improperly or collusively joined to manufacture federal diversity jurisdiction. See 28 U.S.C. § 1359.

The removing defendant bears the burden of demonstrating that federal jurisdiction exists, and therefore that removal was proper.  *See Jernigan v. Ashland Oil, Inc*., 989 F.2d 812, 815 (5ᵗʰ Cir.1993).  As a general matter, the removal statute is to be construed narrowly and in favor of remand to state court. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941).  Indeed, "doubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction." *Acuna v. Brown & Root Inc*., 200 F.3d 335, 339 (5ᵗʰ Cir.2000). Accordingly, all disputed questions of fact must be resolved in favor of the non-moving party.  *See Burden v. Gen. Dynamics Corp*., 60 F.3d 213, 216 (5ᵗʰ Cir.1995).

*1.  Diversity Jurisdiction*

Executive Risk and Homeland assert that diversity jurisdiction exists under 28 U.S.C. § 1332 and removal was therefore proper.  Their reasoning begins with the contention that two of the non-diverse Louisiana defendants, SIR and RMS, have "settled with the plaintiffs" and plaintiffs "have begun proceedings to confect a settlement with CorVel." *R. 15*.  Thus, they contend, only defendant Med-Comp remains to be considered in determining diversity jurisdiction.   Although  Med-Comp  is  a  Louisiana  company  and  a  non-diverse  party,

Executive Risk and Homeland further assert that plaintiffs have improperly joined them, as the insurers of CorVel, with plaintiffs' claims against Med-Comp, a Louisiana company which neither of them insured.  Hence, they contend that the Court should ignore Med-Comp's citizenship, find that removal is proper and deny plaintiffs' motion to remand.

A case that is not originally removable under "diversity jurisdiction because of the presence of a nondiverse defendant may be removed only after it is clear under applicable state law that the nondiverse defendant has been taken out of the case, leaving a controversy wholly between the plaintiff and the diverse defendant." *Vasquez v. Alto Bonito Gravel Plant Corp.*, 56 F.3d 689, 694 (5th Cir.1995).  Federal courts must look to state law to determine whether the nondiverse defendant is no longer effectively a party to the case. *Estate of Martineau v. ARCO Chem. Co.*, 203 F.3d 904, 910 (5th Cir.2000).  "A case may be removed based on any voluntary act of the plaintiff that eliminates that nondiverse defendant from the case." *Id*.

Here, Executive Risk and Homeland assert that plaintiffs have settled their claims against SIR, RMS and CorVel.  Under Louisiana law, for a compromise to be enforceable, it "shall be made in writing or recited in open court, in which case the recitation shall be susceptible of being transcribed from the record of the proceedings." La. Civ.Code Ann. art. 3072. The Louisiana Supreme Court "has held several times that although Article 3071 does not expressly require a signed writing, there is an implied requirement for signatures of both parties." *Lavan v. Nowell*, 708 So.2d 1052, 1052 n.3 (La. 1998).

Plaintiffs represent in their opposition that defendants RMS and SIF "are in the

process of attempting to settle but have not yet settled any claims" and "are still parties to the action as no settlement has been confected." *R. 29, p. 2.*  Executive Risk and Homeland have provided no evidence to support their assertion to the Court that RMS and SIR are no longer parties in this action.  To the contrary, the record indicates that on March 30, 2011, the state court entered a Class Notice of a hearing to be conducted on June 30, 2011 to determine whether the proposed settlement with SIF and RMS is fair, reasonable, and adequate ("fairness hearing"). *R. 1-1; 1-2.*  As to Executive Risk and Homeland's assertion regarding CorVel's settlement, while plaintiffs acknowledge that they began settlement proceedings with CorVel, the settlement has not been approved by the court.  *Id.* at p.1.  Pursuant to the record, CorVel and plaintiffs entered into a memorandum of understanding dated March 31, 2011, agreeing to a settlement on a class wide basis, and a fairness hearing  was scheduled to be conducted in state court on May 27, 2011. *R. 31-1; 31-2, State Court Order.*  Because Executive Risk and Homeland removed the state court action on May 2, 2011, the settlements have not been approved and judgments have not been entered.

As Executive Risk and Homeland have provided no evidence what so ever that RMS, SIF and/or CorVel have reached enforceable settlements with plaintiffs under Louisiana law, their argument that Med-Comp is the sole remaining non-diverse defendant is dispelled.[1]

---

[1] Executive Risk and Homeland contend that in the event a settlement with CorVel is consummated, "plaintiffs likely will pursue coverage under the respective insurance policies pursuant to an assignment of rights from CorVel," and "[s]uch assignment has nothing to do with Med-Comp."  While Executive Risk and Homeland fail to cite any support for their contention that such action would constitute misjoinder, under Louisiana law, "rights in an 'already-filed personal injury suit' are not 'strictly personal' and thus

Even assuming *arguendo* that Med-Comp was the only remaining defendant other than Executive Risk and Homeland, the Court finds, for the following reasons, that Med-Comp was not improperly or fraudulently joined.

## I.  Improper or Fraudulent Joinder

Executive Risk and Homeland argue that the Court should find diversity under the type of improper joinder identified in *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1360 (11th Cir.1996), abrogated on other grounds by *Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir.2000), because plaintiffs improperly joined their claims against Executive Risk and Homeland with Med-Comp.  In *Tapscott*, the Eleventh Circuit recognized that fraudulent joinder can exist when a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability, and when the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant.  *Id.* at 1360.  This scenario was identified by the *Tapscott* court as a third type of fraudulent joinder which exists in addition to the two types traditionally  identified.[2]  *Id.* at 461.

Although the Eleventh Circuit is the only federal appellate court to adopt this third type of fraudulent misjoinder, the Fifth Circuit has appeared to recognize the principle,

---

are 'freely assignable.'"  *Woodfield v. Bowman*, 193 F.3d 354, 359 fn. 8-9 (5th Cir. 1999).

[2] In *Ross v. Citifinancial, Inc.*, 344 F.3d 458, 461 (5th Cir.2003), the Fifth Circuit stated that fraudulent joinder may be established by showing: (1) actual fraud in pleading jurisdictional facts; or (2) the inability of the plaintiff to establish a cause of action against the nondiverse defendant. 344 F .3d at 461.  Executive Risk and Homeland do not allege improper joinder on either of these grounds.

although not expressly adopted it.  *In re Benjamin Moore & Co.*, 318 F.3d 626, 630-31 (5th Cir.2002) ("without detracting from the force of the *Tapscott* principle that fraudulent misjoinder of plaintiffs is no more permissible than fraudulent misjoinder of defendants to circumvent diversity jurisdiction."); *see, Crockett v. R.J. Reynolds Tobacco Co.*, 436 F.3d 529, 533 (5th Cir.2006) (stating that if the requirements for joinder prescribed by Rule 20(a) are not met, "joinder is improper even if there is no fraud in the pleadings and the plaintiff does have the ability to recover against each of the defendants.").

The Court recognizes that most district courts within this circuit have taken the position that the Fifth Circuit has at least implicitly adopted *Tapscott* and therefore assume that the *Tapscott* analysis is an acceptable method of establishing improper joinder.  *See e.g., Hospitality Enterprises, Inc. v. Westchester Surplus Lines Ins. Co.*, 2011 WL 1303954, (E.D.La.,2011) (J. Fallon); *Bienemy v. Continental Casualty Co.*, 2010 WL 375213, at 6 (E.D.La. Jan. 26, 2010) (J. Lemelle); *Akshar 6, L.L.C. v. Travelers Cas. & Sur. Co. of America*, 2010 WL 3025018, 3 (W.D.La.,2010) (J. Hicks); *Accardo v. Lafayette Ins. Co.*, 2007 WL 325368, 3 (E.D.La.,2007) (J. Vance).  The Court notes, however, in *Smallwood v. Illinois Central Railroad Co.*, 385 F.3d 568, 573 (5th Cir.2004), an *en banc* Fifth Circuit decision that post-dates *Benjamin Moore*, the Fifth Circuit identified only two methods of establishing improper joinder, actual fraud in the pleading of jurisdictional facts and the inability of the plaintiffs to plead a cause of action against the non-diverse defendants in state court.  There is no mention of *Tapscott*-type improper joinder as an acceptable method of establishing improper joinder in *Smallwood*.  Thus, *Tapscott*-type fraudulent misjoinder *may*

not be recognized in the Fifth Circuit.  *See Bienemy* at 6 (and cases cited therein).  The Court need not resolve this issue, however,  because it finds Executive Risk and Homeland's reliance on *Tapscott* to support their position is misplaced.  *See Tapscott* at 1360.

Under the analysis set forth in *Tapscott*, "fraudulent misjoinder" is said to exist when: (1) a defendant has been misjoined with other defendants in violation of applicable joinder rules; and (2) the misjoinder is so egregious as to constitute fraudulent joinder.  *Tapscott*, 77 F.3d at 1360.  "Under *Tapscott*, the Court must first determine if joinder of all of the claims against the [] defendants is so egregious as to constitute improper joinder. As a predicate to that decision, the Court must decide whether federal or state rules of joinder apply in a *Tapscott* analysis. District courts in this circuit are not of one mind on the issue.  The majority of the district courts that have applied *Tapscott* have held that the misjoinder issue should be determined under state joinder law rather than federal joinder law." *Accardo*, 2007 WL at 3 (E.D.La.,2007) (J. Vance); *see also, Ngo v. Essex Ins. Co.*  2008 WL 4544352, 3 (E.D.La.,2008)  (J. Fallon); *Turner v. Murphy Oil USA, Inc.*, 2007 WL 2407310, 6 (E.D.La., 2007) (J. Fallon);  *Touro Infirmary v. American Maritime Officer*,  2007 WL 4181506, 7 (E.D.La.,2007) (J. Fallon).   "[B]ecause plaintiffs brought their actions in state court and were required to follow state joinder rules when they did so, state joinder rules are the relevant ones to determine the propriety of the joinder of plaintiffs and/or defendants after removal to federal court." *Accardo*, at 4.  This Court agrees.

In this case, the relevant state joinder rule is Article 463 of the Louisiana Code of

Civil Procedure. That article states, in relevant part:

> Two or more parties may be joined in the same suit, either as plaintiffs or as defendants, if:
>
> (1) There is a community of interest between the parties joined;
>
> (2) Each of the actions cumulated is within the jurisdiction of the court and is brought in the proper venue; and
>
> (3) All of the actions cumulated are mutually consistent and employ the same form of procedure.

La.Code Civ. P. article 463.[3]  The Louisiana Supreme Court has defined "community of interest" as "the parties' causes of actions (or defenses) arising out of the same facts, or presenting the same factual and legal issues."  *Stevens v. Bd. of Trustees of Police Pension Fund of City of Shreveport*, 309 So.2d 144, 147 (La.1975) (quoting Official Revision Comment (c), Article 463).

A "community of interest is present between different actions or parties, where enough factual overlap is present between the cases to make it commonsensical to litigate them together."  Turner, 2007 WL at 6 (quoting *Mauberret-Lavie v. Lavie*, 850 So.2d 1, 2 **(**La. App. 4 Cir, 2003**))**.  Even where plaintiffs have filed distinct claims involving different legal theories against joined defendants, so long as the claims arise out of the same set of facts and will involve similar evidence, the court has found that *Tapscott* fraudulent misjoinder does not exist. *See id.* (citing *Miller v. Commercial Union Cos*., 305 So.2d 560,

---

[3]  Executive Risk and Homeland allege only that "there is no community of interest" between them and Med-Comp.

562-63 (La. App. 1 Cir., 1974); *see also Dufrene v. Hanover Ins. Co.*, 2007 WL 4180584 1 (E.D.La. Nov. 21, 2007) (J. Fallon).

In their Original Petition, plaintiffs joined SIF, RMS and Med-Comp as defendants under alleged violations of the PPOA.  Plaintiffs joined CorVel in their Amended Petition under the same allegations and also properly joined CorVel's insurers, Executive Risk and Homeland, as defendants under Louisiana's Direct Action Statute.  Plaintiffs alleged that defendants, SIF, RMS, Med-Comp and CorVel entered into contracts with plaintiffs pursuant to the PPOA which allowed defendants' clients to pay a discounted rate for health care services.  *R. 1-3.*  Plaintiffs further alleged that defendants reimbursed them in workers' compensation cases at the lower PPOA contracted rates, rather than at the higher mandated workers' compensation rates.  *Id.* In doing so, plaintiffs claim that SIF, RMS, Med-Comp and CorVel violated the provisions of La.R.S. 40:2203.1, and that Executive Risk and Homeland provided insurance coverage for damages plaintiffs sustained by the violations

The Court finds there is sufficient factual overlap between the claims against the defendants and a "community of interest" is present between the different parties at issue.  As such, all parties were properly joined under Louisiana's joinder law at the time of removal of this action.   Under Louisiana law, Executive Risk and Homeland have not sustained their burden of showing that the joinder of all defendants, in particular Med-Comp, arises to "egregious misjoinder" rather than "mere misjoinder" as required for fraudulent misjoinder

under *Tapscott*.[4]

### 2. The Class Action Fairness Act - CAFA

Executive Risk and Homeland also assert that removal is proper under CAFA, the Class Action Fairness Act.  CAFA grants federal courts original jurisdiction to hear interstate class actions where: (1) the proposed class contains more than 100 members; (2) minimal diversity exits between the parties ( i.e., at least one plaintiff and one defendant are from different states); (3) the amount in controversy exceeds $5,000,000; and (4) the primary defendants are not states, state officials, or other governmental entities.  28 U.S.C. § 1332(d)(2) and (d)(5).  Additionally, CAFA facilitates removal of actions originally filed in state court by eliminating both the need for unanimous consent among all defendants and the one-year removal deadline.  See 28 U.S.C. § 1453(b); *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 804, 810 (5th Cir.2007) (*Preston II*).

Nonetheless, federal courts must decline jurisdiction over a proposed class action if either of the following narrow exceptions is proven by a preponderance of the evidence: (1) the local controversy exception, 28 U.S.C. § 1332(d)(4)(A); or (2) the home state exception, 28 U.S.C. § 1332(d)(4)(B).  *Preston II* at 810.  The local controversy exception states a district court shall decline to exercise jurisdiction:

(A)(i) over a class action in which --

---

[4] Courts which have applied Tapscott's "fraudulent misjoinder" principle have consistently observed that "mere misjoinder" does not constitute "fraudulent misjoinder".  *See e.g.,  Bright v. No Cuts, Inc.*, 2003 WL 22434232, *4 (E.D.La.2003) (J. Africk) (and cases cited therein).

(I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the state in which the action was originally filed;

(II) at least 1 defendant is a defendant-

> (aa) from whom significant relief is sought by members of the plaintiff class;
> (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and
> (cc) who is a citizen of the State in which the action was originally filed; and

(III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and

(ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons....

28 U.S.C. § 1332(d)(4)(A); *Preston v. Tenet Healthsys. Mem'l Med. Ctr., Inc.*, 485 F.3d 793, 797 (5th Cir.2007)("*Preston I*").  Similarly, the home state exception prevents a federal district court from exercising subject matter jurisdiction when "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." *Id.*, § 1332(d)(4)(B).[5] Although conceding that defendants have demonstrated the general requirements necessary to remove this potential class action to federal court under CAFA, plaintiffs contend that the local controversy exception directs the Court to decline subject matter jurisdiction and

---

[5]  In a recent ruling from this court, in a case similar to this action, *George Raymond Williams MD Orthopaedic Surgery  v. Mor-Tem Risk Management*, 11-cv- 0026, The Honorable Elizabeth E. Foote, United Stated District Judge, held that plaintiffs met the elements of the home state exception under 28 U.S.C. § 1332(d)(4)(B).

remand this action.

While CAFA does not change the traditional rule that the party seeking to remove the case to federal court bears the burden of establishing federal jurisdiction, once jurisdiction has been established under CAFA, the objecting party bears the burden of proving by a preponderance of the evidence the applicability of any claimed jurisdictional exceptions. *Preston I* at 797.  "The court has wide, but not unfettered, discretion to determine what evidence to use in making its determination of jurisdiction." *Preston II*, 485 F.3d at 817 (internal citations omitted). The court may rely on the facts alleged in the complaint or request further evidence from either party when determining if a plaintiff has established the applicability of a CAFA jurisdictional exception. *See, e.g., Preston v. Tenet Healthsys. Mem'l Med. Ctr., Inc.*, 463 F.Supp.2d 583, 592-93 (E.D.La.2006) (J. Fallon) (court ordered the defendants to produce additional evidence regarding the citizenship of the putative class).

Executive Risk and Homeland contend that plaintiffs have failed to establish sufficient evidence to establish that (1) two-thirds of the putative class are Louisiana "citizens" at the time the Amended Petition was filed; (2) Med-Comp is  a "significant defendant"; (3) plaintiffs' principal injuries were incurred in Louisiana; and, (4) a similar class action has not been filed in three years preceding this action.

### I.  Whether or not 2/3 of the plaintiffs are citizens of Louisiana

In *Preston I* and *Preston II*, the Fifth Circuit examined the plaintiffs' burden under the CAFA exceptions to show that greater than two-thirds of the putative class members were citizens of the state in which the suit was filed.  The *Preston II* court articulated the standard

14

as follows:

> [T]he parties moving to remand the class action must prove that the CAFA exceptions to federal jurisdiction divest the district court of subject matter jurisdiction. We also held [in *Preston I*] that the party moving for remand must prove the statutory citizenship requirement by a preponderance of the evidence. We reasoned that Congress explicitly enumerated and envisioned deviations from the general removal statute, and nothing in CAFA's text suggests that Congress meant to impose a heightened burden of proof on parties attempting to remand a class action lawsuit to state court.

*Preston II*, 485 F.3d at 797 (citations omitted).

The court applied this standard in *Preston I* and held that greater than two-thirds of the putative class members were in-state domiciliaries by relying upon primary billing addresses provided in the medical records, emergency contact information for the deceased patients, the current addresses for some of the potential class members, eight affidavits stating an intent of returning to New Orleans, and the fact that suit occurred less than two months after Hurricane Katrina. *Preston I*, 485 F.3d at 816-818.  In its decision, the Fifth Circuit specifically acknowledged that there is a common-sense presumption that can be applied to a closed-end class.  *Id*. at 819.

Plaintiffs' Petition defines the purported class as:

> All Louisiana health care providers who have provided services to workers' compensation patients, as contemplated in LA R.S. 23:1021 *et seq.* and whose bills have been discounted after January 1, 2000 pursuant to a Preferred Provider Organization agreement, as defined in LA R.S. 40:2202, by or through SIR, Risk Management, Med-Comp, and CorVel.

*R. 1, Amended Petition, ¶ XI.*  Thus, the putative class allegedly includes only Louisiana health care providers who have rendered services in Louisiana in violation of Louisiana law.

15

In support of their assertions that at least two-thirds of the putative plaintiffs are Louisiana citizens, plaintiffs cite evidence in the record which establishes that of the 1388 putative class members with distinct Federal Tax-ID numbers, at least 1055 of them, or 76%, are business entities organized or incorporated under Louisiana law. *R. 15-5 - 15-10, Exh. C-H, Secretary of State Certificates*. Plaintiffs' evidence consists of a list of the tax identification numbers from health care providers with whom each of the defendants has contracted, *R. 15-4, Exh. C; tax id numbers from CorVel; 15-7, Exh. E, tax id numbers from SIF & Risk Management; 15-11, Exh. I, tax id numbers from Med-Comp,* as well as the related information on the individual health care providers from the Louisiana Secretary of State. *R. 15-5 & 15-6, Exh. D1 & Ds, Corvel Data; 15-8, Exh. F & 15-9, Exh. G, SIF & Risk Management Data.*

Plaintiffs include the summary of all data received from CorVel, SIF, RMS and Med-Comp indicating their Health Care providers' names, tax identification numbers, addresses and Secretary of State domiciliary information as well as the computations which provide as follows: (1) 751 out of 1004, 75%, of the health care providers contracting with CorVel were domiciled in Louisiana; (2) 9 out of 10, 90%, of the health care providers contracting with SIF were domiciled in Louisiana; (3) 295 out of 374, 79%, of the health care providers contracting with RMS were domiciled in Louisiana; (4) 603 out of 752, 80%, of the health care providers contracting with Med-Comp by or through CorVel were domiciled in Louisiana. *R. 15-10, Exh. H; 15-12, Exh. J.*

In addition to the foregoing, plaintiffs cite the affidavit of Cameron Azari, an employee of Epiq Class Action And Claims Solutions ("ECA"), who supervised the class

notice efforts in connection with the state court class litigation and the proposed settlement. *R. 15-13, Exh. K, Azari Aff*. Azari states that of the 1,388 Louisiana provider federal tax identification numbers furnished to plaintiffs by CorVel, ECA mailed class notices to 1,165 of those Louisiana providers between 2008 and 2010; 1,113 of the 1,165, or 95.5%, were mailed to a Louisiana address.  Plaintiffs also cite the March 4, 2009 deposition testimony of Med-Comp, through its representative Michael P. McCrossen, which states that all of the providers with whom Med-Comp has contracted are "in Louisiana." *R. 15-3, Exh. B, Med-Comp Depo., p. 44*.

Executive Risk and Homeland argue that this evidence "does not include providers who have not formally established a 'business organization' or those Tax-ID numbers which Plaintiffs' Class counsel has not yet identified by name." The summary, however, establishes that those providers constitute less than 25% of the identified putative plaintiffs. *R. 15-10, Exh. H; 15-12, Exh. J*.

Based on the foregoing, the Court finds that at least two-thirds of the putative plaintiffs in this action are citizens of Louisiana. *See, Teal Energy USA, Inc. v. GT, Inc*., 369 F.3d 873, 875 (5th Cir.2004) ("Section 1332(a) provides that a corporation is a citizen of both its state of incorporation and the state of its principal place of business for purposes of diversity jurisdiction."); s*ee also,* 28 USC 1332(d)(10) (Under CAFA an unincorporated association[6] is deemed to be a citizen of the state  where it has its principal place of business

---

[6] The citizenship of an unincorporated entity or association, such as a partnership, is based upon the citizenship of each of its members. *Carden v. Arkoma Assocs*., 494 U.S. 185, 195-96

17

and the state under whose laws it is organized.)

> ### ii.  Whether or not there is at least one "significant" defendant

The local controversy exception also requires plaintiffs to demonstrate that the putative class seeks "significant relief" from at least one in-state defendant, and that the alleged conduct of the same defendant "forms a significant basis for the claims asserted by the proposed class." 28 U.S.C. § 1332(d)(4)(A)  The court in *Caruso v. Allstate Ins. Co.*, 469 F.Supp.2d 364, 368 (E.D.La. Jan. 8, 2007)(J. Vance) examined the term "significant relief" under CAFA and stated, "CAFA does not specifically provide a definition of 'significant.' The Eleventh Circuit, however, recently held that whether a class seeks 'significant relief' against a defendant is determined by whether the relief sought against that defendant is significant relative to the relief sought against the other codefendants. *See Evans v. Walter Industries, Inc.*, 449 F.3d 1159, 1167 (11th Cir.2006). Other courts likewise have compared the relief sought against the in-state defendant to the entire relief sought against all of the defendants to determine whether the 'significant relief' prong has been met. *See Robinson v. Cheetah Transportation*,  2006 WL 468820, *3 (W.D.La. Feb.27, 2006)(M.J. Hayes) (stating 'whether a putative class seeks significant relief from an in-state defendant includes not only an assessment of how many members of the class were harmed by the defendant's actions, but also a comparison of the relief sought between all defendants and each defendant's ability to pay a potential judgment'). "

---

(1990).

In support of their position, plaintiffs cite their Original Petition which states in part,

(1) The Plaintiff Class is seeking "significant relief" from Med-Comp: i.e. statutory damages under La. R.S. 40:2203.1 for its alleged failure to comply therewith in conjunction with thousands of discounts, and

(2) Med-Comp's alleged conduct forms a significant basis for the claims by the Plaintiff class: i.e. Med-Comp's role as an alleged "group purchaser" in facilitating PPO discounting through its own network and/or through CorVel without compliance with La. R.S. 40:2203.1.

*R. 15, citing Petition, R. 1-3.*  Plaintiffs further allege that "the Plaintiff Class is seeking statutory damages against Med-Comp awardable under La. R.S. 40:2203.1 based on Med-Comp's failure to comply with La R.S. 40:2203.1 when (1) its discounts are applied via the Med-Comp PPO network through Med-Comp's own clients **_and_** (2) when Med-Comp's discounts are applied via CorVel by CorVel's clients."  *Id.*

Executive Risk and Homeland assert that "from the allegations cited by the plaintiff, there is no way of getting any sense of whether Med-Comp is a "significant" defendant. *R.* 25.  The Court disagrees.  As previously noted, it is undisputed that Med-Comp is a Louisiana citizen.  Plaintiffs named six defendants in this case - SIF, RMS, Med-Comp, CorVel and CorVel's alleged insurers, Homeland and Executive Risk.  Plaintiffs' Amended Petition alleges that defendants SIR, RMS, Med-Comp and CorVel are providers of PPO discounts to their clients whose duties include providing access to PPO discounted rates in conjunction with Louisiana workers' compensation payments.  Plaintiffs' further allege that these defendants have "failed to comply with the provisions of La. R.S. 40:2203.1 when applying PPO discounts to workers' compensation medical bills for services rendered within

the state of Louisiana." *R. 1-3, Original Petition, ¶ VI - VII.*

As to Med-Comp, specifically, plaintiffs allege statutory damages for failure to comply with La. R.S. 40:2203.1 when discounts are applied via the Med-Comp PPO network through Med-Comp's own clients and when Med-Comp's discounts are applied via CorVel by CorVel's clients.  In their motions to remand, plaintiffs and CorVel represent that Med-Comp is connected to Corvel, *R. 15; 20*.  As alleged by plaintiffs, "not only is Med-Comp connected to CorVel, but a large percentage of the CorVel PPO discounts at issue in this case were actually taken through the Med-Comp USA PPO network which had contracted with CorVel to accomplish the very PPO discounts complained of in this lawsuit." *R. 29, p. 4.* Moreover, in the deposition of Med-Comp, its representative McCrossen confirms that Med-Comp contracted with CorVel and provided CorVel with access to the Med-Comp PPO Network.  *R. 15-3, Exh. B, pp. 84-86; R. 20.*

Based on the foregoing, specifically that the purported class includes Louisiana healthcare providers whose workers' compensation related medical bills were improperly discounted in violation of Louisiana law, that Med-Comp is one of four named defendants and that Med-Comp's discounts were applied to its own clients as well as co-defendant CorVel's clients, the Court finds that Med-Comp is a significant defendant as required under the Local Controversy exception of CAFA.

### *iii.  Whether or not the principal injuries were incurred in Louisiana*

Executive Risk and Homeland contend that "there is no firm idea of the location of the alleged victims."  As the Court has previously held,  the record establishes that over 2/3

of the putative plaintiffs are Louisiana citizens, who rendered services in Louisiana and who allege that defendants violated the Louisiana PPO Act, La. R.S. 40:2203.1.  The Court finds that the principal injuries were incurred in Louisiana.

### iii.  Whether or not other class actions were filed within three years

Executive Risk and Homeland also contend that "at least one similar class action has been filed in the three years preceding the lawsuit."  *R. 25*.  They represent that "[i]n December 2006, one of the putative class members (Lake Charles Memorial Hospital) filed a demand for class action arbitration against CorVel that makes the same claims as does the plaintiff's Amended Petition here."  *Id.*  Plaintiffs argue that: (1) an arbitration proceeding is not included within CAFA's definition of "class action" under 28 U.S.C. § 1332(d)(1); and, (2) CorVel was named as a defendant in their Amended Petition on March 24, 2011, over four years after the arbitration action was filed.

"Arbitration" is a form of dispute resolution used to resolve disputes outside the court and is unlike a "class action" which is a form of lawsuit within the court.  *See, e.g., Black's Law Dictionary*, 119; 284 (9th ed. 2009).  Because the local controversy exception, 28 U.S.C. § 1332(d)(4)(A), specifically provides for a "class action," an arbitration proceeding is not a factor in this analysis.  Additionaly, while the relevant date for determining whether a prior class action was filed is not addressed by 28 U.S.C. § 1332, section 1332(d)(7) provides some guidance.  Section 1332(d)(7) states that the citizenship of the members of the proposed class is determined as of the date of filing of the initial pleading or the date of service of an

amended pleading.  Even assuming *arguendo* that the Court were to consider the arbitration proceeding as a previously filed "class action,"  CorVel was named as a defendant in the state court action on March 24, 2011, more than three years after the arbitration proceeding was filed.

Accordingly, the Court finds that plaintiffs' have met the requirements of the Local Controversy Exception under CAFA, 28 U.S.C. § 1332(d)(4)(A), and therefore, this Court does not have jurisdiction under CAFA.

*Conclusion*

For the foregoing reasons, the Court finds that defendants, Executive Risk and Homeland, have failed to meet their burden to establish that this action was properly removed to this Court under either 28 U.S.C. § 1332 or CAFA, 28 U.S.C.§ 1332(d).  The Court will therefore grant plaintiffs' and defendant CorVel's Motions To Remand.